UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

XINYUE HIPPE,

        Plaintiff,

v.

        Case No. 25-cv-298-pp

CIRCUIT CITY CORPORATION, INC.,

        Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT (DKT. NO. 12)**

---

      On February 28, 2025, the plaintiff filed a class action complaint alleging that the defendant had violated Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§12181 *et seq.*, because the website circuitcity.com is not formatted to allow a legally blind customer like the plaintiff to access its content. Dkt. No. 1. The affidavit of service reflects that the summons and complaint were served on March 5, 2025. Dkt. No. 2. The defendant has not appeared or answered the complaint. On May 23, 2025, the plaintiff asked the clerk to enter default, dkt. no. 10, and the clerk did so four days later. The plaintiff then filed the instant motion for default judgment, seeking declaratory and injunctive relief, damages and attorneys' fees. Dkt. No. 12.

**I.    Entry of Default**

      Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on

1

the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

Under Federal Rule of Civil Procedure 4, a plaintiff may serve a corporate defendant "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The process server's affidavit of service states that on March 5, 2025, she served the summons and complaint on John Downey with Harvard Business Services, Inc., who she asserts is designated by law to accept service of process on behalf of the defendant. Dkt. No. 2. The defendant is a Delaware corporation, dkt. no. 1 at ¶20, and Delaware's Division of Corporations reflects that Harvard Business Services is the defendant's registered agent. See https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx (search term: "Circuit City Corporation"). The court finds that the plaintiff properly effected service on the defendant by serving its registered agent.

## II.    Plaintiff's Motion for Default Judgment

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id.

2

A. <u>Factual Allegations</u>

The plaintiff asserts that default judgment is proper because the defendant "owns and operates a website (https://Circuitcity.com) that contains multiple barriers that deny blind and visually impaired individuals full and equal access to its goods and services" in violation of Title III of the ADA. Dkt. No. 12 at ¶¶1–2. The plaintiff is legally blind and cannot use a computer without the assistance of screen reader software to read digital content. Dkt. No. 1 at ¶19. Screen reader software "vocalizes visual information on a computer screen" and uses auditory cues to allow a visually impaired user to effectively use websites. <u>Id.</u> at ¶23; <u>see also</u> <u>Andrews v. Blick Art Materials, LLC</u>, 286 F. Supp. 3d 365, 374 (E.D.N.Y. 2017) (describing the functions of screen reader software). For the screen reader software to function, the website's content must be capable of being rendered into text; otherwise, the blind user is not able to access the content of the website. Dkt. No. 1 at ¶24.

The plaintiff alleges that circuitcity.com "contains access barriers" to blind users using screen reader software. <u>Id.</u> at ¶32. The plaintiff lists several examples of these barriers. <u>Id.</u> First, the plaintiff states that several images on circuitcity.com lack a text description, or "alt-text," that would allow the screen reader to accurately describe the image to the user. <u>Id.</u> at ¶33. The plaintiff states that circuitcity.com also "lacks prompting information" that would allow a blind user to locate and accurately complete forms to make purchases or inquiries about the defendant's merchandise. <u>Id.</u> at ¶34. Other issues the plaintiff identifies include missing or inaccurate menu headings, hidden

3

elements that were not vocalized by a screen reader, sub-menus that were not vocalized or accessible via keyboard commands and links that open new windows without warning and prevent the user from moving between pages. Id. at ¶35. The plaintiff also alleges that the website requires the use of a mouse to complete a transaction, but many blind users cannot use a mouse because moving a mouse's cursor on the screen requires vision. Id. at ¶36. The plaintiff asserts that as a result, "blind customers are essentially prevented from purchasing any items" on the website. Id. at ¶¶35–36.

The plaintiff alleges that she attempted to purchase new headphones from the defendant's website, but that the interactive elements on the site were not readable by her screen reader and that she was unable to complete the purchase on her own. Id. at ¶39. The plaintiff states that she remains interested in purchasing products on the defendant's website and will immediately access the website again once the defendant corrects the current accessibility barriers. Id. at ¶40.

The complaint brings three causes of action. The first alleges that the defendant violated Title III of the ADA and seeks an injunction to prevent further violations. Id. at ¶¶56–70. The second cause of action seeks a declaration that the defendant violated Title III. Id. at ¶¶71–73. The third cause of action alleges negligent infliction of emotional distress. Id. at ¶¶74–77. The complaint seeks declaratory and injunctive relief; nominal, compensatory and punitive damages; and attorneys' fees and costs. Id. at 19–20.

4

The complaint also contains class action allegations. Id. at ¶¶50–55. But the plaintiff appears to have abandoned her class claims in the motion for default judgment. The plaintiff does not seek class damages and has not moved for class certification under Federal Rule of Civil Procedure 23(c)(1). "Class damages cannot be awarded if no class is certified." Davis v. Hutchins, 321 F.3d 641, 648 (7th Cir. 2003) (vacating award of class damages and affirming default judgment on an individual basis where no class was certified in the district court). The court will construe the motion for default judgment as seeking default judgment only on an individual basis. See Hippe v. Favorite Daughter Holdings LLC, Case No. 25-cv-475, Dkt. No. 11 at 1 (E.D. Wis. July 9, 2025) (granting in part plaintiff's motion for default judgment on an individual basis where she failed to seek class certification prior to moving for default judgment).

B. Liability

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a). Put more succinctly, Title III "prohibits public accommodations from discriminating on the basis of disability." Access Living of Metro. Chi. v. Uber Technologies, Inc., 958 F.3d 604, 609 (7th Cir. 2020).

5

To state a claim under Title III, the plaintiff must show that (1) she is disabled within the meaning of the ADA, (2) the defendant owns, leases or operates a place of public accommodation and (3) the defendant discriminated against the plaintiff because of her disability. Mohammed v. DuPage Legal Assistance Found., 781 F. App'x 551, 552 (7th Cir. 2019).

The plaintiff first must establish that she is disabled. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(1). The ADA regulations identify "seeing" and "reading" as "major life activities." 29 C.F.R. §1630.2(i)(1)(i). The plaintiff alleges that she is legally blind and cannot see or read digital content on a computer without the assistance of screen reader software. Dkt. No. 1 at ¶19. Taking these well-pled allegations as true, as the court must on a motion for default judgment, the plaintiff has sufficiently stated that her visual impairment substantially limits the major life activities of seeing and reading, and that she is disabled within the meaning of the ADA.

The plaintiff next must establish that the defendant owns and operates a place of public accommodation. The Seventh Circuit has held that a "public accommodation" should not be interpreted "literally, as denoting a physical site." Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC, 268 F.3d 456, 459, 2001 WL 1205383 (7th Cir. 2001). District courts within the Seventh Circuit have interpreted that

6

language to hold that websites are places of public accommodation under Title III. Wright v. Thread Experiment, LLC, No. 19-cv-01423, 2021 WL 243604, at *3 (S.D. Ind. Jan. 22, 2021) ("[C]onsistent with the Seventh Circuit's directives that 'places of public accommodations' are not limited to physical spaces . . . Title III of the ADA governs websites that otherwise satisfy the statutory definition of 'places of public accommodation' under 42 U.S. Code § 12181(7)."); see also McCabe v. Heid Music Co., Inc., No. 23-CV-1215, 2024 WL 1174352, at *4 (E.D. Wis. Mar. 19, 2024); Walsh v. Dania Inc., No. 23 C 14380, 2024 WL 554286, at *4 (N.D. Ill. Feb. 12, 2024). The complaint alleges that the defendant "provides to the public a website known as Circuitcity.com" through which the defendant sells its products. Dkt. No. 1 at ¶21. Sales or rental establishments are "public accommodations" listed in 42 U.S. Code §12181(7)(E). The defendant's website—a digital sales establishment for purchasing electronics items—falls within that category. See Wright, 2021 WL 243604, at *3 (holding that a retail sales website is a public accommodation). The court finds that the circuitcity.com is a place of public accommodation.

Finally, the plaintiff must establish that the defendant discriminated against her due to her disability. Discrimination under Title III includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." Castelino v. Rose-Hulman Inst. of Tech., 999 F.3d 1031, 1037 (7th Cir. 2021) (quoting 42 U.S.C. § 12182(b)(2(A)(ii)). The complaint alleges that the plaintiff

7

attempted to access the defendant's website to purchase headphones but was unable to do so due to the website's incompatibility with her screen reader program. Dkt. No. 1 at ¶39. The plaintiff asserts that if the defendant "correct[ed] the numerous accessibility barriers" described in the complaint, she would return to the website to complete her purchase. Id. at ¶40. Accepting these allegations as true, the defendant's failure to make its website accessible to the plaintiff via screen reader is a failure to make "reasonable modifications" necessary to afford the plaintiff equal access to its goods and services. 42 U.S.C. §12182(b)(2(A)(ii); McCabe, 2024 WL 1174352, at *5 (finding the plaintiff's allegations that she was unable to complete her purchase on a musical instrument website due to its incompatibility with screen reader software was sufficient to establish discrimination based on her disability). The court finds that the complaint states a claim that the defendant violated Title III of the ADA by failing to make its website accessible to the plaintiff.

The complaint also brings a claim for negligent infliction of emotional distress. To establish a claim for negligent infliction of emotional distress under Wisconsin law, "the plaintiff must prove the following elements: (1) that the defendant's conduct was negligent[,] (2) that the plaintiff suffered severe emotional distress, and (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury." Jackson v. McKay-Davis Funeral Home, Inc., 830 F. Supp. 2d 635, 651 (E.D. Wis. 2011) (citing Bowen v. Lumbermens Mut. Cas. Co., 183 Wis. 2d 627, 632 (1994)). The complaint alleges that the defendant acted negligently by failing to maintain a website accessible to blind individuals

8

and that failure to maintain an accessible website caused the plaintiff to suffer severe emotional distress. Dkt. No. 1 at ¶¶75–77. Accepting these allegations as true, the complaint states a claim for negligent infliction of emotional distress.

C. Relief

The complaint seeks declaratory and injunctive relief; nominal, compensatory and punitive damages in an unspecified amount; and attorneys' fees. Dkt. No. 1 at 19–20. In her motion for default judgment, the plaintiff requests a permanent injunction "requiring Defendant to make the website accessible in conformance with WCAG 2.2 Level AA standards within 180 days" and to "[m]aintain accessibility through ongoing monitoring and compliance procedures," a declaratory judgment that the defendant's website violates the ADA, compensatory damages for the plaintiff's emotional distress and attorneys' fees and costs based on a subsequent fee petition. Dkt. No. 12 at ¶¶4–9. But the proposed order submitted with the plaintiff's motion requires the defendant to "pay Plaintiff nominal damages of $1.000,00 [sic] and compensatory damages." Dkt. No. 12-3 at ¶5. The plaintiff submitted no evidence in support of a request for compensatory damages and it is unclear from the plaintiff's motion whether she is seeking nominal damages.

Monetary damages are not available under Title III of the ADA, Scherr v. Marriott Int'l, Inc., 703 F.3d 1069 (7th Cir. 2013), so the plaintiff could receive damages only for her negligent infliction of emotional distress claim. But the plaintiff has failed to submit any affidavits or other evidence to support an award of compensatory or punitive damages for her claim of negligent infliction

9

of emotional distress. "[E]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." e360 Insight, 500 F.3d at 602 (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id.

Judge Griesbach recently ruled on a motion for default judgment filed by this same plaintiff in a case where she raised the same claims she raises here, but against a different defendant. Hippe, Case No. 25-cv-475, Dkt. No. 11. In that case, as here, the plaintiff did not submit affidavits in support of her claim for compensatory damages. Id. at 3. Judge Griesbach awarded the plaintiff nominal damages of $1.00 for her claim of negligent infliction of emotional distress. Id. This court will award the plaintiff the same nominal damages of $1.00 for her negligent infliction of emotional distress claim.

The court will deny the plaintiff's request for declaratory relief. "[D]eclaratory relief is inappropriate where a private plaintiff seeks relief for discriminatory acts that have already occurred" because the declaratory judgment would not "prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties." Marquez v. Riveredge Hosp., Inc., Case No. 21-CV-3369, 2022 WL 832650, at *6 (N.D. Ill. Mar. 21, 2022) (collecting cases). The plaintiff's request for "a declaratory judgment that Defendant's website, as currently constituted, violates the ADA" seeks only a

declaration that the defendant engaged in discriminatory acts that have already occurred.

The plaintiff also seeks injunctive relief. For the court to issue an injunction, the plaintiff must show "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." LAJIM, LLC v. Gen. Elec. Co., 917 F.3d 933, 944 (7th Cir. 2019) (quoting eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)).

The plaintiff has shown she suffered an irreparable injury. The complaint details the ways in which the defendant's website is inaccessible to screen reader users. Dkt. No. 1 at ¶35. Accepting the allegations in the complaint as true, these barriers make it impossible for the plaintiff to purchase products from the website. The plaintiff alleges that she intends to attempt to access the defendant's website in the future to complete her purchase. Id. at ¶40. The plaintiff has suffered, and will continue to suffer, an irreparable injury so long as the defendant's website is inaccessible to her. Wright, 2021 WL 243604, at *4 (finding that the plaintiff's continued inability to access the defendant's website due to its incompatibility with screen readers was an irreparable injury).

There is no other remedy at law for the plaintiff's injury. Monetary damages are not available under Title III of the ADA, Scherr, 703 F.3d 1069, so

11

the plaintiff's only option for relief is an injunction. To the extent that the plaintiff seeks injunctive relief for her negligent infliction of emotion distress claim, the court will not grant it because for that claim, she has an adequate remedy at law in the form of damages.

The balance of hardships between the parties weighs in favor of granting the injunction. Absent an injunction, the plaintiff will continue to be unable to purchase products from the defendant's website. If the court issues the injunction the plaintiff seeks, the defendant will be required to expend some costs to bring its website into compliance with the ADA. The costs of compliance are "something required of all businesses with public accommodations under the ADA." McCabe, 2024 WL 1174352, at *7. The plaintiff will suffer the greater hardship in the absence of an injunction.

The public interest will be served by an injunction. There is a strong public interest in eliminating discrimination against individuals with disabilities. PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001) ("Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" (citations omitted)). The injunction the plaintiff seeks will serve that public interest by making the defendant's website more accessible to visually impaired individuals. The court will issue a permanent injunction.

The court has found that the plaintiff is entitled to a permanent injunction. But the court must determine the terms of the injunction. In her

12

complaint, the plaintiff asks the court to issue an injunction "to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the laws of Wisconsin" and "requiring Defendant to take all the steps necessary to make its website, Circuitcity.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Circuitcity.com is readily accessible to and usable by blind individuals." Dkt. No. 1 at 19–20. In her motion for default judgment, the plaintiff specifically asks the court to "[e]nter permanent injunctive relief requiring Defendant to make the website accessible in conformance with WCAG 2.2 Level AA standards within 180 days" and "[m]aintain accessibility through ongoing monitoring and compliance procedures." Dkt. No. 12 at ¶¶5–6. The plaintiff's proposed order suggests yet other relief, purporting to order that "Defendant shall, within 180 days of this Order, bring its website (https://Circuitcity.com) into full compliance with the Web Content Accessibility Guidelines (WCAG) 2.2 Level AA and maintain that compliance going forward" and "Defendant shall implement policies, practices, and training to ensure continued compliance with the ADA for all future website content and updates." Dkt. No. 12-3 at ¶¶3–4. To the extent that the requested injunction in plaintiff's motion and proposed order differ from the relief requested in the complaint, the court cannot grant it. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The court will consider the only the injunctive relief requested in the complaint.

The court must "tailor injunctive relief to the scope of the violation found." e360 Insight, 500 F.3d at 604–05 (quoting Nat'l Org. for Women, Inc. v. Scheidler, 396 F.3d 807, 817 (7th Cir. 2005)). The plaintiff's requested injunctive relief is not tailored to the defendant's violation. She asks the court to enter an injunction "to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the laws of Wisconsin." Dkt. No. 1 at 19. The only Wisconsin "law" the court has found the defendant violated is the plaintiff's tort claim for negligent infliction of emotional distress. Injunctive relief is not available for that claim. The court will enter an injunction to enjoin the defendant only from committing further violations of Title III of the ADA. The court will "require[e] Defendant to take all the steps necessary to make its website, Circuitcity.com, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Circuitcity.com is readily accessible to and usable by blind individuals." Dkt. No. 1 at 20.

The plaintiff also seeks payment of costs and reasonable attorneys' fees, dkt. no. 1 at 20, which are recoverable under the ADA. Lange v. City of Oconto, 28 F.4th 825, 848–49 (7th Cir. 2022) (prevailing party may recover "a reasonable attorney's fee, including litigation expenses, and costs" (quoting 42 U.S.C. §12205)). The court will require the plaintiff to submit a fee petition and supporting documentation by the date set below.

**III. Conclusion**

The court **GRANTS IN PART** and **DENIES IN PART** the plaintiff's motion for default judgment. Dkt. No. 12.

The court **GRANTS** the plaintiff's request for injunctive relief for the defendant's violation of Title III of the ADA and her request for nominal damages for the defendant's negligent infliction of emotional distress. Dkt. No. 12.

The court **DENIES** the plaintiff's motion to the extent it seeks class damages, compensatory damages, declaratory relief and injunctive relief for the defendant's negligent infliction of emotional distress. Dkt. No. 12.

The court **AWARDS** the plaintiff $1.00 in nominal damages.

The court will issue a separate injunction in compliance with Federal Rule of Civil Procedure 65(d).

The court **ORDERS** that by the end of the day on **September 10, 2021**, the plaintiff must submit a fee petition and supporting documentation for costs and reasonable attorneys' fees incurred.

Dated in Milwaukee, Wisconsin this 19th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**